

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00894-CR

Adam Paul **EANNARINO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2013CR8490
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Karen Angelini, Justice
                Jason Pulliam, Justice

Delivered and Filed:  November 10, 2015

AFFIRMED

Adam Paul Eannarino was convicted by a jury of continuous sexual abuse of his stepdaughter and was sentenced by the trial court to life imprisonment without parole. On appeal, Eannarino contends: (1) the trial court abused its discretion in prohibiting cross-examination of the complainant's mother and grandfather concerning specific incidents of conduct by the complainant; (2) the State illegally seized materials from his jail cell which were used as evidence at trial; (3) the trial court erred in overruling an objection to the prosecutor's closing argument; (4) the jury charge erroneously allowed the jury to convict him even if the jury did not unanimously

agree on the specific acts of abuse committed or the exact dates on which the acts were committed; (5) section 21.02(d) of the Texas Penal Code unconstitutionally permits a jury to convict a person of continuous sexual abuse of a child even if the jury does not unanimously agree on the specific acts of abuse committed or the exact dates on which the acts were committed; and (6) the trial court erred in determining the complainant's medical records did not contain material, exculpatory material. We affirm the trial court's judgment.

## BACKGROUND

Eannarino and the complainant's mother married when the complainant was five, and the family subsequently moved from California to San Antonio, Texas. Eannarino would care for the complainant while her mother worked.

In April of 2013, the complainant called her mother at work hysterically reporting that she locked herself in the bathroom because Eannarino was trying to hurt her. The complainant was twelve at that time. The complainant's mother heard Eannarino rattling the doorknob and telling the complainant to open the door and it would be over soon. The complainant's mother rushed home to encounter Eannarino intoxicated, dressed only in boxers, and removing zip ties from a drawer in the kitchen.

Around the same time, Eannarino and the complainant's mother discussed returning to California. Although Eannarino's drinking was a concern, the decision to return to California was due to the problems the complainant was experiencing at school. Due to these problems, the complainant was sent to California to live with her grandfather while the complainant's mother obtained a job transfer. Eannarino was to continue living in San Antonio because his student loan debt would be forgiven if he taught school for two more years; however, Eannarino would visit the family in California whenever possible and would maintain contact by Skype and Face Time.

After living in California for a few weeks, the complainant got into trouble at school, and the complainant's grandfather called the complainant's mother to discuss the situation. During their telephone conversation, the complainant blurted out to her grandfather that Eannarino molested her. The complainant subsequently provided the details of the sexual abuse, which had occurred over a two year period, to her grandmother.[1]

Eannarino was indicted for continuous sexual abuse of a child, and a jury found him guilty. Eannarino appeals.

### SPECIFIC INCIDENTS OF CONDUCT

In his first six issues, Eannarino contends the trial court abused its discretion in not allowing him to cross-examine the complainant's mother and grandfather concerning specific incidents of conduct by the complainant. Before trial, the trial court granted a motion in limine preventing Eannarino from eliciting evidence regarding specific incidents of conduct by the complainant or her mental health without first approaching the bench. A trial court's ruling on a motion in limine, however, does not preserve any error for appellate review. *Geuder v. State*, 115 S.W.3d 1, 14-15 (Tex. Crim. App. 2003).

A.      Cross-Examination of Complainant's Mother

During his cross-examination of the complainant's mother, defense counsel first asked whether the April 2013 incident in which the complainant called her mother from the bathroom was the motivating incident that split the family. The complainant's mother responded, "No." Defense counsel then asked the complainant's mother for a timeline of where that particular incident fit. The prosecutor objected, and the attorneys approached the bench. The prosecutor objected that defense counsel was attempting to elicit testimony of "specific instances of conduct

---

[1] The complainant's grandfather called the complainant's grandmother immediately after the outburst and asked her to come to his home. The complainant's grandparents were divorced.

of the complainant" that were not relevant or admissible. Defense counsel explained he believed the jury might have the impression that the complainant was sent to California because of a sexual abuse accusation but the timeline showed the outcry was not made until a few weeks after the complainant was in California. Defense counsel argued the "jury is entitled to hear an accurate timeline, specifically what the timing was of these events and the fact that it — there was not an immediate outcry of one being abused and then they left at — there was a gap of two weeks —." In response to this argument, the trial court stated, "I think that's clear to the jury that she was already in California while they were here." Defense counsel then referenced a Facebook posting in the following exchange:

> [Defense Counsel]: Okay. And I think also, the second point is — that I think is very important is that at the time that — the motivating incident that made her, the complainant, go to California was that she had posted on Facebook, I'm going to kill myself and nobody likes me. And I think that it's important that the jury knows that there were issues. Not from a mental health standpoint, necessarily, but that she certainly wasn't shy to make those issues known. She put them on Facebook and never said anything about sexual abuse, never even hinted at any sort of sexual abuse.
>
> THE COURT: You're going to have to flesh that out. Where does that get you? What's the point of that? She put on Facebook she — and so therefore what?
>
> [Defense Counsel]: She put on Facebook that she's going to kill herself, nobody liked her.
>
> THE COURT: Okay.
>
> [Defense Counsel]: And I think that what that shows is not only from a mental health standpoint, her mental state, but also that she didn't say anything about what was going on. And I think that's particularly significant in this case where the prosecutor has already introduced a theme of, Well, you know, why don't people say anything? Well, they're scared.
>
> Well, she was saying things. It's not a case like the jury has heard so far where nothing has been presented. They've actually — you know, it's already in the jury's mind, Oh, well, kids don't always say things. In this case, the complainant was saying things, just never said anything about any sexual abuse.
>
> [Prosecutor]: And, Judge, I would argue that that's not relevant and that he's citing two separate arguments. That she said that she was depressed is a totally separate and apart issue from saying that he was sexually abusing her, which is what she'd been threatened about saying.
>
> And I'd have no objection to clarifying the timeline. If he wants to ask about, you know, when did she leave and when did she make the outcry, that's fine. I have no objection to that. But I do not think the specific instances are relevant.

THE COURT: Yeah, I don't think that we're going — I don't think it's — that that's admissible, at least not at this point, based on the state of the evidence. I don't think anything needs to be clarified by virtue of that Facebook post.

[Defense Counsel]: Okay.

THE COURT: So if you want to clarify a timeline, you do it cautiously, Counsel, without going into that.

[Defense Counsel]: Okay.

Based on the foregoing exchange, Eannarino asserts on appeal that the trial court did not allow him to elicit testimony regarding the nature of the problems the complainant was having at school in Texas or testimony regarding the Facebook posting. Eannarino contends this evidence was necessary to prove the complainant had a motive for lying because she wanted to remain in California and not return to Texas where she was unhappy. Specifically, Eannarino contends the trial court's limitation on his cross-examination inhibited his ability to develop the complainant's motive for fabricating the allegation of abuse which was admissible under: (1) his Sixth Amendment right of confrontation; (2) Rule 613(b) which permits impeachment of a witness by evidence of bias or interest; (3) Rule 404(b) which permits the defense to offer other acts of misconduct to establish motive; and (4) Rule 107, the rule of optional completeness, because the evidence would assist in explaining: (a) the reason Eannarino remained calm when confronted with the accusations; and (b) the nature of the problems the complainant was having at school in Texas.

During trial, however, defense counsel did not assert any of the foregoing reasons for admitting the Facebook message. Instead, defense counsel argued the message showed the complainant was talking about some issues while still in Texas, just not about sexual abuse. Defense counsel never suggested to the trial court that the Facebook posting showed the complainant's motive for lying so she would not have to return to Texas. Similarly, defense counsel's only other reason for introducing the evidence was to establish the complainant did not

make an outcry with regard to sexual abuse until after she was in California. During cross-examination, however, defense counsel clarified the timeline.

To preserve error with regard to the exclusion of evidence, a party must explain to the trial court the reasons the evidence is admissible by clearly articulating the basis on which the trial court should admit the evidence. *Reyna v. State*, 168 S.W.3d 173, 177-78 (Tex. Crim. App. 2005). Although appellate courts may uphold a trial court's ruling on any legal theory or basis applicable to the case, we may not reverse a trial court's ruling on any theory or basis that might have been applicable to the case, but was not raised. *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002). A trial court "cannot be held to have abused its discretion merely by ruling on the only theories of law presented to it." *Id*. at 337. Similarly, the argument on appeal must comport with the argument made at trial. *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014).

In this case, the arguments Eannarino makes on appeal regarding the reasons he should have been allowed to elicit testimony regarding the complainant's problems in school and her Facebook message do not comport with the reasons defense counsel articulated at trial. Therefore, Eannarino's first three issues are not preserved for this court's review.

B.      Cross-Examination of Complainant's Grandfather

In his fourth, fifth, and sixth points of error, Eannarino contends the trial court erred in not allowing him to elicit testimony from the complainant's grandfather regarding the complainant's troubles that led to her moving to California and the trouble in California that precipitated the grandfather's phone call to the complainant's mother.

During cross-examination, defense counsel asked the complainant's grandfather whether he had any personal knowledge of the reason the complainant moved to California. At a bench conference, defense counsel stated he wanted to ensure the jury did not think the reason the complainant moved to California was due to allegations of sexual abuse. The trial court responded

the evidence established she moved to California because she was having problems at school so the jury did not have any misimpression.

Defense counsel later recalled the complainant's grandfather as a witness and asked whether the complainant was in trouble immediately before she made the sexual abuse allegations. The prosecutor objected that the question violated the motion in limine. Immediately upon approaching the bench for a conference regarding the objection, defense counsel stated he was not asking the reason the complainant was in trouble, just about the fact that she was in trouble. Defense counsel stated, "We have no intention of asking the context of them, it is merely that she's in school, she gets suspended, and it was a pretty serious experience, and he [the grandfather] was talking back and forth to [Eannarino]." The trial court ruled that defense counsel could ask the question. During defense counsel's subsequent questioning regarding the seriousness of the trouble and potential discipline, the only objections related to defense counsel's phrasing of the questions as leading or eliciting hearsay.

On appeal, Eannarino contends "counsel was prohibited from asking: why the complainant moved to [her grandfather's] home; whether the complainant got into 'pretty serious' trouble in California immediately before accusing Mr. Eannarino; if she had been almost suspended for sending inappropriate text messages to a boy in school; what [her grandfather] told her about the trouble she was in; and, whether she was going to be disciplined for it by her parents in San Antonio." Eannarino then asserts these limitations violated: (1) his constitutional right to cross-examine the complainant's grandfather; (2) Rule 613(b); (3) Rule 404(b); and (4) Rule 107. During trial, however, defense counsel did not articulate any of these grounds as a basis for admitting the testimony he sought to elicit. In fact, defense counsel voluntarily limited the scope of his questions regarding the complainant's trouble in California that precipitated the phone call to her mother. With regard to whether the State subsequently opened the door, defense counsel

objected to the question he argued opened the door before an answer was given by the witness, and the State withdrew the question after a bench conference. Because the arguments Eannarino makes on appeal regarding the reasons he should have been allowed to elicit testimony regarding the complainant's troubles do not comport with the reasons defense counsel articulated at trial, Eannarino's fourth, fifth, and sixth issues are not preserved for this court's review. *See Bekendam*, 441 S.W.3d at 300; *Reyna*, 168 S.W.3d at 177-78; *Martinez*, 91 S.W.3d at 336-37.

## JAIL CELL MATERIALS

In his seventh issue, Eannarino asserts evidence was admitted at trial that was illegally seized from his jail cell in violation of the Fourth and Fourteenth Amendments to the United States Constitution. At trial, however, the only objection made by defense counsel was that the admission of the evidence in question would violate Eannarino's Fifth Amendment right to remain silent and not testify. In his reply brief, Eannarino concedes the seventh issue is waived because defense counsel did not assert a Fourth Amendment objection. Because the complaint on appeal does not comport with the trial objection, Eannarino's seventh issue is not preserved for our review. *See Bekendam*, 441 S.W.3d at 300.

## CLOSING ARGUMENT

In his eighth issue, Eannarino contends the trial court erred in overruling his objection to the following argument made by the prosecutor during closing argument:

> [Prosecutor]: . . . . I want to talk about the defense's case. And I'll have Jennifer talk about the defendant's testimony, which was not credible at all. But what's the case that the defense brought you? They brought you a handful of witnesses who barely know this man. At the most, one person knows him, has known him for five years. One person has only been around him for one school semester. And yet, they get up here and they tell you what his character is? They don't know him at all. They've never been in his home, they've never seen him interact with his kids. They don't know anything about his private life.
>
> Why wouldn't they bring somebody he's known his whole life? How about a brother, sister, mother, father? Why didn't they testify? Somebody who knows him. Somebody who's seen him around his kids.

[Defense Counsel]: Objection, Your Honor, shifting the burden to the defense.

THE COURT: Overruled.

[Prosecutor]: Oh, they put a case on. They could have brought you those witnesses. You know why they didn't? Because it wouldn't have helped. They wouldn't have testified that he's this great guy in private.

[Defense Counsel]: Your Honor, objection, facts not in evidence.

THE COURT: Overruled.

[Defense Counsel]: Objection, shifting the burden.

THE COURT: Overruled.

Eannarino contends *McKenzie v. State*, 617 S.W.2d 211 (Tex. Crim. App. [Panel Op.] 1981) is "on point" because the prosecutor was arguing he should have called specific other people as witnesses and speculated that the witnesses were not called because they would not have testified he is a "great guy in private," so their testimony would not have been helpful to him. In *McKenzie*, however, the prosecutor made the following argument:

Mr. Smith has argued to you long and hard that this man that you found guilty of fondling a child should be turned loose on probation. And I listened to his testimony on his application for probation, and I noted in my mind the people who didn't testify that he should be turned loose on probation, people he didn't call for it. I thought he might call forward a minister to say that if he's released on probation he'll be welcomed in his church. I thought that he might call on an old college classmate to say that, 'We're still friends and chums.' I thought he might call his employer up here to say that, 'Even if you're convicted, you're welcome back to our place of business in good graces.' I thought he might call a neighbor up here and say that, 'Even if Mr. McKenzie's placed on probation, he's still welcomed in our neighborhood. We still want him living next to us with our family and children,' and so on. I thought they might call a parent up here to say that they'd make a little girl available to molest, but they didn't call anybody like that, anymore than they called —

617 S.W.2d at 218-19. The court first noted that a prosecutor "properly may comment on the failure of the accused to call to attest to his reputation any witnesses at all or some particular known witness who is competent to give material testimony on the matter." *Id.* at 620. However, the court held the prosecutor's statements went far beyond such permissible comments, asserting, "The prosecutor was engaging in heavy sarcasm, making appellant out as a pariah a person

- 9 -

deservedly shunned by his minister, his old college classmate, his neighbors and parents of small children, though there was no evidence whatsoever to support the branding." *Id*. at 221.

The arguments in *McKenzie* are clearly distinguishable from the prosecutor's argument in the instant case. *Cf. Mendoza v. State*, No. 05-98-00596-CR, 2000 WL 567076, at *4-5 (Tex. App.—Dallas May 9, 2000, no pet.) (distinguishing *McKenzie* and holding following argument proper, "Did [defense counsel] bring in one family member to tell you what a great guy he is? Did he bring in his employer? Did you hear from a pastor of a church? Did you hear from one person that said this man is a good person, be lenient, be compassionate? You did not hear from one witness.") (not designated for publication). And, just as the *McKenzie* court noted, Texas courts have consistently held the State may argue in closing that the defendant failed to present evidence in his favor, as long as the remarks do not fault the defendant's own failure to testify. *See Pope v. State*, 207 S.W.3d 352, 365 (Tex. Crim. App. 2006) (noting "party may always comment on the fact that the opponent failed to call an available witness and then argue 'Don't you know, if Mr. X had anything favorable to say, my opponent would have called him.'"); *see generally Bible v. State*, 162 S.W.3d 234, 249 (Tex. Crim. App. 2005); *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995); *Hinojosa v. State*, 433 S.W.3d 742, 762 (Tex. App.—San Antonio 2014, pet. ref'd); *Orellana v. State*, 381 S.W.3d 645, 655 (Tex. App.—San Antonio 2012, pet. ref'd). In view of the foregoing, the prosecutor's argument in this case regarding Eannarino's failure to call witnesses who knew him more personally and speculating the witnesses were not called because their testimony would not be favorable was permissible. Because the trial court did not err in overruling Eannarino's objection, Eannarino's eighth issue is overruled.

## UNANIMITY AND CONSTITUTIONALITY OF SECTION 21.02

In his ninth through thirteenth issues, Eannarino asks this court to revisit our prior decision in *Fulmer v. State*, 401 S.W.3d 305 (Tex. App.—San Antonio 2013, pet. ref'd), in which we held

section 21.02 of the Texas Penal Code, which defines the offense of continuous sexual abuse of a child, is constitutional. Eannarino contends the statute is unconstitutional and violates the requirement of jury unanimity because the jury is allowed to convict a person of the offense without unanimously agreeing on the specific acts of abuse committed or the exact dates the acts were committed. Because the jury charge tracked the language of the statute, Eannarino further contends the jury charge was erroneous.

To convict a defendant of the offense of continuous sexual abuse of a child, a jury must find: (1) the defendant committed two or more acts of sexual abuse during a period of thirty or more days; and (2) at the time of each act of sexual abuse, the defendant was 17 years of age or older and the victim was a child younger than 14 years of age. TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2014). Section 21.02(d) further provides, "If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." *Id*. at § 21.02(d).

In *Fulmer*, this court first noted jurors are required to unanimously agree that a defendant committed each element of an offense but not the manner and means by which the defendant committed the offense. 401 S.W.3d at 311. In the context of the offense of continuous sexual abuse of a child, this court agreed with our sister courts that "the individual acts of sexual abuse are manner and means, not [elements] of the offense." *Id*. at 312. "Therefore, unanimity [is] required only as to a finding that [the defendant] committed two or more acts of sexual abuse — not as to which specific acts he committed." *Id*. Because section 21.02 requires a jury to unanimously agree on the elements of the offense of continuous sexual abuse of a child, we held

the statute was constitutional. *Id.* at 313. We decline Eannarino's invitation to revisit our holding and overrule his ninth, tenth, eleventh, twelfth, and thirteenth issues.

## MEDICAL RECORDS

In his final issue, Eannarino contends the trial court erred to the extent it failed to require the State to disclose any exculpatory, mitigating, or impeachment information contained in the complainant's medical records the trial court reviewed *in camera*. Eannarino requests that this court conduct our own review to determine if the records contain any material required to be disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963).

Given the confidential nature of medical records, the trial court properly reviewed the records *in camera* to determine if they contained any *Brady* material. *See Thomas v. State*, 837 S.W.2d 106, 114 (Tex. Crim. App. 1992); *Dixon v. State*, 923 S.W.2d 161, 167 (Tex. App.—Fort Worth 1996), *vacated and remanded on other grounds*, 928 S.W.2d 564 (Tex. Crim. App. 1996). To constitute *Brady* material, evidence in the records must be favorable and material; that is, a reasonable probability must exist that the outcome of the trial would have been different if the evidence had been disclosed. *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011). Having examined the records, we hold the trial court did not err in determining the records did not contain any material which *Brady* would have required the State to disclose. *See Martinez v. State*, No. 04-12-00739-CR, 2014 WL 5464157, at *6 (Tex. App.—San Antonio Oct. 29, 2014, pet. ref'd) (conducting similar review) (not designated for publication). Eannarino's fourteenth issue is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH